IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriel Diaz-Amador and Estela Maria-Diaz, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>Wells Fargo Home Mortgage, Inc., et. al.,<br><br>    Defendants. | CV 11-243-TUC-DCB (HCE)<br><br>**REPORT & RECOMMENDATION** |

Pending before the Court is Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiffs' First Amended Complaint.[1] (Doc. 13). Plaintiffs have filed their Response (Doc. 14) and Defendant has filed a Reply (Doc. 15). For the foregoing reasons, the Magistrate Judge recommends that the District Court grant in part and deny in part Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

---

[1] This action is filed against Wells Fargo Home Mortgage, Inc. and Wells Fargo Bank, N.A. The Notice of Removal indicates that Wells Fargo Bank, N.A. (hereinafter "Defendant"), has been "erroneously sued as Wells Fargo Home Mortgage..." (hereinafter "WFHM"). (Notice of Removal, (Doc. 1), p.1 ). Plaintiffs allege that WFHM and Defendant "are each the agent of the other, or are alter egos each of the other or are otherwise so intertwined as to be one entity, and each is entirely responsible for any act of the other." (FAC, ¶4). Any reference by the Court to "Defendant*s*" in this Report and Recommendation is not any indication as to the merits of Defendant's position. Whether WFHM is a proper defendant is not at issue at this time.

# I. FACTUAL & PROCEDURAL BACKGROUND

On April 21, 2011, this matter was removed from the Superior Court of the State of Arizona for the County of Santa Cruz on the basis of diversity jurisdiction. (Doc. 1). On May 23, 2011, Plaintiffs, through counsel, filed their First Amended Complaint (hereinafter "FAC") (Doc. 11). The following is a summary of Plaintiffs' allegations in their FAC. Plaintiffs previously owned a single family residence at 1693 Ruido Court, Rio Rico, Santa Cruz County, Arizona, which is the subject of this lawsuit. (FAC ¶1). On or about November 20, 2002, they, "as borrower and trustor, executed a promisory note and deed of trust ([hereinafter] "deed of trust"), securing the subject property to a loan made by WF[HM] to Plaintiffs in the sum of $135,751.00." (*Id.* at ¶5). Thereafter, on October 22, 2010, WFHM "noticed a trustee sale, A.R.S. §33-801, *et seq.*, for the subject property, with a sale date of January 21, 2011." (*Id.* at ¶6). Upon notification of the notice of trustee sale, Plaintiffs requested "a loan modification, offering as an inducement a lien on two adjoining unencumbered lots wholly owned by Plaintiffs and necessary to the full enjoyment of the single family residence." (*Id.* at ¶7). WFHM informed Plaintiffs that the trustee sale would be postponed until February 2011, while WFHM "fully investigated the offer." (*Id.* at ¶9). Prior to February 16, 2011, WFHM rejected Plaintiffs' offer and informed Plaintiffs that the sale would proceed on February 25, 2011. (*Id.* at ¶10). On February 16, 2011, Plaintiffs wrote to Mark C. Oman, Senior Executive Vice President of WFHM to request further review of their offer. (*Id.* at ¶11). On February 22, 2011, Robin Webb, who identified herself as a Vice President of WFHM, informed Plaintiffs that WFHM agreed to further investigation of their offer and that the sale would be postponed until March 2, 2011. (*Id.* at ¶12). "Plaintiffs did not exercise their right to reinstate, A.R.S. §33-813, by 5:00 p.m., February 24, the day prior to a sale set for February 25." (*Id.* at ¶13).

On or about February 26, 2011, WFHM informed Plaintiffs "that the sale had inadvertently gone forward on February 25, and that Defendant Wells Fargo was now the owner by trustee deed recorded on March 3, 2011...." (*Id.* at ¶14). On March 21, 2011, Plaintiffs were informed "by an attorney from Wells Fargo..." that a forcible entry and

detainer action "had been filed or would be filed naming..." them as defendants. (*Id.* at ¶15).

Plaintiffs' action is based upon four counts: (1) Contract (Count One); (2) Breach of A.R.S. §33-813 (Count Two); (3) Reformation (Count Three); and (4) Injunction (Court Four). Plaintiffs allege that they have lost the equity in their residence.[1] (FAC, ¶19).

Defendant moves for dismissal of Plaintiffs' FAC for failure to state a claim.

## II. DISCUSSION

### A. STANDARD

To state a claim for relief under Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff must make "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). Further, "'[t]o survive a motion to dismiss [under Fed.R.Civ.P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face;' that is, plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Telasaurus VPC, LLC. v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010), *cert. denied,* __ U.S. __, 132 S.Ct. 95 (2011), (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, __, 129 S.Ct. 1937, 1949 (2009)); *see also Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (to defeat a motion to dismiss, the "non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint..." does not apply to legal conclusions. *Iqbal,* 556 U.S. __, 129 S.Ct. at 1949; *see*

---

[1] Plaintiffs allege that the appraised value of the subject property is $190,000 and the balance of the loan at issue was $130,000 thus resulting in a loss of at least $60,000 to Plaintiffs. (FAC, ¶19).

*also Telasaurus,* 623 F.3d. at 1003 (pleadings that are no more than legal conclusions "'are not entitled to the assumption of truth.'" (*quoting Iqbal,* 556 U.S. at __, 129 S.Ct. at 1950)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S . at___, 129 S.Ct. at 1949. Moreover, the court "cannot assume any facts necessary to [the plaintiffs']... claim that they have not alleged." *Jack Russell Terrier Network of Northern Calif. v. American Kennel Club, Inc.,* 407 F.3d 1027, 1035 (9th Cir. 2005).

However, the court will assume "'well-pleaded factual allegations,'...to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Telasaurus,* 623 F.3d. at 1003 (*quoting Iqbal*, 556 U.S. at __, 129 S.Ct. at 1950); *see also Iqbal,* 556 U.S. at__, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at __, 129 S.Ct. at 1949. Determining plausibility is a "context-specific task..." that requires the court to "draw on its judicial experience and common sense." *Id.* at __, 129 S.Ct. at 1950. A complaint cannot survive dismissal where the court can only infer that a claim is merely possible rather than plausible. *Id.*

### B. Count One: Contract

Plaintiffs allege that "the agreement to forebear foreclosure until March 2, 2011 was an executory accord between [WFHM] and Plaintiffs" and that by allowing the trustee sale to proceed on February 25, 2011, Defendants materially breached the terms of the accord. (FAC, ¶¶17-18). Thus, Plaintiffs' claim appears to be that the alleged February 22, 2011 phone call from Robin Webb informing them that WFHM "agreed to further investigation and that the sale had accordingly been postponed to March 2, 2011" constituted an executory

accord.² (*Id.* at ¶12). No reading of the FAC leads to the conclusion that Plaintiffs are contending that the agreement, *i.e.*, "executory accord" was an acceptance of the actual loan modification proposed by Plaintiffs, that being a lien on the two lots wholly owned by Plaintiffs that adjoined the subject property.

"An agreement between the parties to the satisfaction of an existing claim by a future substituted performance is an accord executory." *Leschorn v. Xericos,* 121 Ariz. 77, 79, 588 P.2d 370, 373 (App. 1978). *See also* 13 Sarah Howard Jenkins, *Corbin on Contracts*, §69.1, p. 273 (Revised ed. 2003) (hereinafter "*Corbin on Contracts*") ("The term 'accord executory', more commonly referred to as an 'executory accord,' means an agreement for the future discharge of an existing claim by a *substituted performance*.") (emphasis in original). "[T]o constitute discharge of a claim by way of an accord and satisfaction, in the form of an express or implied contract[,]...[t]he following elements are essential: (1) a proper subject matter; (2) competent parties; (3) an assent or meeting of the minds of the parties[;] and (4) a consideration...." *Rossi v. Stewart,* 90 Ariz. 207, 210, 367 P.2d 242, 244 (1961)(citations omitted). *See also Corbin on Contracts*, at §69., p. 274 ("As with any agreement, the requirements of consideration must be met.").

Plaintiffs state:

> Defendant set a sale for the Plaintiff's [sic] residential property for February 25, 2011, yet promised through an officer with ostensible authority to postpone the sale to March 2, 2011. In reliance on the promise, Plaintiffs made no attempt to reinstate prior to February 25; nonetheless, Defendant held the sale on the original date.

(Plaintiffs' Response, p.2). According to Plaintiffs: "The case is simple: a promise was made upon which the Plaintiffs unquestionably relied, yet the promise was breached with resulting profound damage." (*Id.* at p. 3).

Neither the allegations of the FAC nor Plaintiffs' Response support the conclusion that Plaintiffs have stated a claim that their conversation with Ms. Webb constituted an

---

²A fair reading of the FAC is that Ms. Webb's phone call was in response to Plaintiff's February 16, 2011 letter to WFHM Senior Executive Vice President Mark Oman urging "a further review of their offer" for loan modification. (FAC, ¶11).

- 5 -

executory accord which Defendants then breached. As Defendant points out, Plaintiffs fail to plead that Defendants agreed to discharge a future claim for a substitute performance. (Motion, p. 4; Reply, p. 2). Nor do Plaintiffs allege what constituted their consideration for WFHM's alleged agreement, via Ms. Webb, to delay the trustee sale. (*Id.*). At best, Plaintiffs' Response suggests that Plaintiffs rely not on contract liability but on the equitable theory of promissory estoppel. *See Chewning v. Palmer,* 133 Ariz. 136, 138, 650 P.2d 438, 440 (1982) (promissory estoppel is an equitable remedy). "Promissory estoppel is not a theory of contract liability, but instead a replacement for a contract when parties are unable to reach a mutual agreement." *Johnson Intern'l. Inc., v. City of Phoenix,* 192 Ariz. 466, 474, 967 P.2d. 607, 615 (App. 1998) (citation omitted). Promissory estoppel is the principle that "'[a] promise which the promissor should reasonably expect to induce action or forbearance on the part of the promissee or the third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.'" *Chewning,* 133 Ariz. at 138, 650 P.2d at 440 (*quoting Restatement (2d) of Contracts* §90 (1981)). Thus, Plaintiffs must allege that: (1) Defendants made a promise and should have reasonably foreseen that Plaintiffs would rely on that promise; and (2) Plaintiffs actually relied on the promise to their detriment.[3] *Higginbottom v. State of Arizona,* 203 Ariz. 139, 143, 51 P.3d 972, 976 (App. 2002) (citation omitted). "Although Arizona is a notice pleading state, claims of promises for purposes of promissory estoppel must be specifically plead." *Johnson Inter'l., Inc.,* 192 Ariz. at 474, 957 P.2d at 615 (footnote omitted). Although Plaintiffs' Response suggests they rely on the theory of promissory estoppel, Plaintiffs have not specifically pled that Ms. Webb's alleged statement constituted a promise or that Plaintiffs relied on same to their

---

[3]As Defendant correctly points out, "[d]etrimental reliance requires 'substantial and material change of position.' *Weiner v. Romley,* 94 Ariz. 40, 45, 381 P.2d 581, 584 (1963)." (Reply, p. 3). *See also Employer's Reinsurance Corp. v. GMAC Ins.,* 308 F.Supp.2d 1010, 1018 (D.Ariz. 2004) ("Under Arizona law, the prejudice necessary for [promissory] estoppel must be substantial; the injury must be real and not technical or formal in nature.").

detriment.

To further preclude Plaintiffs' contract theory, Defendant relies upon the statute of frauds which provides, in pertinent part that, "[n]o action shall be brought in any court..." to enforce a contract "for the sale of real property or an interest therein" unless the contract is in writing and signed by the party to be charged. A.R.S. §44-101(6). An oral agreement for the sale of real property or an interest therein is "presumed to be unenforceable unless otherwise exempted from the [s]tatute of [f]rauds." *Arnold & Assoc., Inc. v. Misys Helathcare Sys.,* 275 F.Supp2d 1013, 1020 (D.Ariz. 2003). In Arizona, a mortgage constitutes an interest in real property for purposes of the statute of frauds. *See Schrock v. Federal National Mortgage Assoc'n.,* 2011 WL 3348227, *4 (D.Ariz. Aug. 3, 2011)(*citing Fremming Const. Co. v. Security Sav. & Loan Ass'n.,* 115 Ariz. 514, 566 P.2d 315 (App. 1977)). Further, a modification to the material terms of a mortgage loan is also subject to the statute of frauds. *Id.* (*citing Best v. Edwards,* 217 Ariz. 497, 176 P.3d 695 (App. 2008); *Executive Towers v. Leonard,* 7 Ariz. App. 331, 439 P.2d 303 (1968)).

However, "[i]f an oral agreement can possibly be performed within one year, the statute of frauds does not apply." *Healy v. Coury,* 162 Ariz. 349, 353, 783 P.2d. 795, 799 (App. 1989) (*citing* A.R.S. §44-101(5)). Further, the statute of frauds does not apply in cases of promissory estoppel when the party asserting the statute of frauds defense has misrepresented that the statute's requirements have been met or promises to put the agreement in writing. *Mullins v. Southern Pacific Transportation Co.,* 174 Ariz. 540, 542, 851 P.2d 839, 542 (App. 1993).

According to Defendant, "Plaintiffs' alleged 'oral' executory accord, if permitted, would modify the Plaintiffs' liability on a loan secured by real property..." such agreement is unenforceable under the statute of frauds and, therefore, Count One is subject to dismissal. (Motion, p. 6). Plaintiffs' Response is silent on the statute of frauds defense. Without any guidance from Plaintiffs, their failure to oppose Defendant's argument leads to the conclusion that Plaintiffs' concede the issue. The problem, however, is determining exactly what it is Plaintiffs are conceding given that Defendant argues the proposed loan

1  modification fell within the statute of frauds but does not address whether the statute of
2  frauds applies to the alleged oral promise to postpone the sale for five days while Plaintiffs'
3  proposal was investigated further. *See* A.R.S. §44-101(5)(statute of frauds does not apply
4  where agreement could have been performed within one year).

5  As discussed *supra* Plaintiffs have failed to state a claim for breach of executory
6  accord. Therefore, on one hand, the statute of frauds defense to the same claim is moot. On
7  the other hand, the statute of frauds defense is relevant as to whether Plaintiffs should be
8  permitted to amend the complaint. It remains to be seen whether Plaintiffs can state a claim
9  for promissory estoppel, or some other theory, and whether Defendant can assert a statute
10 of frauds defense to that claim.

11 Likewise, dismissal of Plaintiffs' Count One for failure to state a claim also renders
12 moot Defendant's argument that Plaintiffs have failed to plead damages sufficient for a
13 breach of contract claim. (*See* Motion, pp. 6-7). The FAC reflects that Plaintiffs fell behind
14 in their obligation on the subject property. The FAC also suggests that Plaintiffs' held other
15 wholly-owned assets such as the property they offered as part of their proposed loan
16 modification. It remains to be seen whether Plaintiffs can state a claim for promissory
17 estoppel, which requires them to show detrimental reliance as that term is defined under
18 Arizona law, *see supra*, at n. 3, or some other theory. Accordingly, at this point in the
19 proceeding, Defendant's argument on the issue of damages does not prevent granting leave
20 to amend the FAC.

21 **C.   Breach of A.R.S. §33-813**

22 Plaintiffs claim in Count Two that "Defendants deprived Plaintiffs of their statutory
23 right of redemption..." under A.R.S. §33-813(A) "by alleging that the February 25, 2011, sale
24 would not go forward on that date, but yet nonetheless conducting the sale on that date...."
25 (FAC, ¶22). Plaintiffs allege that they were damaged by their loss of right to reinstate the
26 deed of trust in a timely manner. (FAC, ¶23). Defendant contends that there is no right of
27 action for deprivation of reinstatement rights under the statute. (Motion, p. 7). According
28 to Defendant, the only provision in the statute that creates a cause of action is A.R.S. § 33-

813(E), which makes a trustee liable in damages for failure to record a proper notice of cancellation of the notice of sale after a trustor reinstates the deed of trust. (*Id.*). Defendant argues that subsection (E) does not apply in this case because Plaintiffs have not reinstated, nor have they named the trustee as a party. Other than pointing out that deed of trust statutes should be strictly construed in favor of the borrower, Plaintiffs do not specifically address Defendant's argument.

"Arizona's Deed of Trust Act (the Act), A.R.S. §§ 33-801 to 33-821, first authorizes deeds of trust and then provides a detailed and comprehensive framework for carrying out non-judicial foreclosures." *In re Krohn,* 203 Ariz. 205, 215 52 P.3d 774, 784 (2002). "The Act is a comprehensive set of statutes governing the execution and operation of deeds of trust." *In re Bisbee,* 157 Ariz. 31, 32 754 P.2d 1135, 1137 (1998). Moreover, one major purpose of the Act "was to provide relatively inexpensive and speedy foreclosure proceedings." *Andreola v. Arizona Bank,* 26 Ariz.App. 556, 559, 550 P.2d 110, 113 (App. 1976); *see also Patton v. First Fed. Sav. & Loan Assoc.,* 118 Ariz. 473, 477, 578 P.2d 152, 156 (1978) (recognizing that the deed of trust "procedures authorized by statute make it far easier for lenders to forfeit the borrower's interest in the real estate securing a loan, and also abrogate the right of redemption after sale guaranteed under a mortgage foreclosure."). The Arizona Supreme Court has been clear that "[t]he Deed of Trust statutes...strip borrowers of many of the protections available under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower." *Patton,* 118 Ariz. at 477, 578 P.2d at 158.

Under A.R.S. § 33-813,

> If, prior to the maturity date fixed by the contract or contracts, all or a portion of a principal sum or interest of the contract or contracts secured by a trust deed becomes due or is declared due by reason of a breach or default in the performance of the contract or contracts or of the trust deed, the trustor or the trustor's successor in interest, any person having a subordinate lien or encumbrance of record thereon or any beneficiary under a subordinate trust deed, before 5:00 p.m. mountain standard time on the last day other than a Saturday or legal holiday before the date of sale or the filing of an action to foreclose the trust deed, may reinstate by paying to the beneficiary, the trustee or the trustee's agent in a form acceptable to the beneficiary or the trustee the entire amount then due under the terms of the contract or contracts or trust

> deed, other than the portion of the principal as would not then be due had no default occurred, by curing all other defaults and by paying the amounts due under subsection B of this section.

A.R.S. §33-813(A); *see also* A.R.S. § 813(B) (setting forth procedures once reinstatement is accomplished and stating "[t]he proceedings shall be cancelled and the contract or contracts and trust deed shall be deemed reinstated and in force as if no breach or default had occurred...."); *Chaparral Dev. v. RMED Int'l., Inc.,* 170 Ariz. 308, 314, 823 P.2d 1317, 1322 (App. 1992) ("upon payment of all amounts due, the contract shall be deemed reinstated as if no breach or default had occurred."). Additionally, the statute provides that the trustor must, in certain circumstances, "provide a good faith estimate of the sums that appear necessary to reinstate the trust deed" and must specify "the exact amount necessary to reinstate the trust deed...." A.R.S. § 33-813(C), (D). The statute also specifically provides for "actual damages" against a trustee who fails to file a timely notice of cancellation of the notice of sale after a trustor has reinstated the deed of trust. A.R.S. §33-813(E). Section 33-813(F) provides for cancellation of the notice of sale if the trust deed is paid in full or if the sale is not held or is not properly postponed. A.R.S. §33-813(F); *see also* A.R.S. §33-813(G) (setting forth the form for cancellation of a recorded notice of sale).

Thus, after default, a trustor may reinstate the contract as prescribed by the Act. *See* A.R.S. §33-813(A), (B). Herein, the gravamen of Plaintiffs' claim is that their reliance on Ms. Webb's alleged statement that the February 25, 2011 trustee sale would be postponed prevented them from complying with the requirements for reinstatement under A.R.S. §33-813(A). (*See* FAC, ¶22). In this instance, Plaintiff's Count Two is merely part and parcel of a theory such as promissory estoppel, not its own cause of action. On the instant allegations, Plaintiffs' Count Two should be dismissed.

### D. Counts Three and Four: Reformation and Injunction

In Count Three, Plaintiffs request "reformation of the trustee's deed, returning legal title of the subject property to..." them. (FAC, ¶26). In Count Four, Plaintiff's request an injunction against forcible detainer. (*Id.* at ¶¶ 28, 29.A.). Defendant moves for dismissal of these counts because reformation and injunction "are merely remedies and not separate

causes of action." (Reply, p. 5; *see also* Motion, p.9). Plaintiffs have not responded to Defendant's argument on this issue.

"Reformation is the *remedy* designed to correct a written instrument which fails to express the terms agreed upon by the parties...." *Isaak v. Massachusetts Indem. Life Insur. Co.,* 127 Ariz. 581, 584, 623 P.2d. 11, 14 (1981) (emphasis added); *see also Thurston v. Citizens Utils. Co.,* 1995 WL 152713, *3 (D.Ariz. Feb. 16, 1995) ("reformation is a remedy designed to correct a written instrument that fails to express the terms of an agreement reached by the parties due to a mutual mistake of fact."). "A party seeking reformation of a written agreement must 'show that a definite [i]ntention on which the minds of the parties had met pre-existed the written instrument and that the mistake occurred in its execution.'" *SWC Baseline & Crismon Investors, L.L.C. v. Augusta Ranch Ltd. Partnership*, 228 Ariz. 271, ¶17, 265 P.3d 1070 (App. 2011) (*quoting State v. Ashton Co.*, 4 Ariz.App. 599, 602, 422 P.2d 727, 730 (1967)). Moreover, "[i]n the absence of mutual mistake, to reform an instrument because of the unilateral mistake of one party, there must be fraud or inequitable conduct by the other party....Inequitable conduct which would justify reformation when there is unilateral mistake takes the form of knowledge on the part of one party of the other's mistake." *Isaak,* 127 Ariz. at 585, 623 P.2d at 14 (citations omitted).

Likewise, Plaintiff cannot plead an independent cause of action for injunctive relief because this is a remedy for an underlying cause of action, not a separate cause of action in and of itself.

For the reasons stated by Defendant, Plaintiffs Counts Three and Four seeking reformation and injunction, respectively, should be dismissed.

**III.     CONCLUSION**

For the foregoing reasons, all of Plaintiffs' claims should be dismissed. The Ninth Circuit has "held that in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern Calif. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1991). It is not

- 11 -

1 clear on the instant record that Plaintiffs' complaint could not possibly be cured by the allegation of other facts. Consequently, Plaintiffs should be granted leave to amend their complaint.

**IV.     RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court grant Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 13) to the extent that Defendant seeks dismissal of the First Amended Complaint, and deny Defendant's Motion to the extent that it seeks dismissal of this action with prejudice. The Magistrate Judge further recommends that the District Court grant Plaintiffs leave to file a second amended complaint.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b)(2). If objections are filed, the parties should use the following case number: **CV 11-243-TUC-DCB**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to *de novo* review of the issues. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 6th day of February, 2012.

_____
Héctor C. Estrada
United States Magistrate Judge